VAN BRUNT, P. J., and PARKER, J., concurred.

Judgment affirmed, with costs.

---

MARIA MILLER, Respondent, *v.* THE FORT LEE PARK AND STEAMBOAT COMPANY, Appellant.

*Action to recover damages sustained through negligence — evidence improperly stricken out — when it does not require a reversal of the judgment — evidence sufficient to justify compensation for future pain.*

In an action brought to recover damages for personal injuries caused by the plaintiff's falling from the gang plank while crossing from the defendant's steamboat to a wharf, it was contended on the part of the plaintiff that the defendant was negligent in not providing hand rails to the gang plank and sufficient lights.

Upon the trial a managing director of the defendant testified that they had never lost a passenger from the gang plank in carrying a million and a half of people. Upon motion this evidence was stricken out, the defendant excepting.

*Held,* that such evidence was competent; that the defendant had the right to submit to the jury, for its consideration, whether the company had reason to apprehend an accident from the use of a gang plank without guards.

Subsequently the same witness testified that the same style of gang plank had been in use since the boat was built, had been used day and night, and they had never lost a passenger therefrom, although they had had hundreds of them on that boat, and that was the first case in twenty-two years. The captain testified that they had used that kind of a gang plank on that steamer for thirteen years, both day and night, at all times of the year, and he had never known of any other passenger falling off. An employee of the defendant for about twelve years testified that they had used the same gang plank that night that they had always used before; that many thousands of passengers had passed over that gang plank, and that no other passenger had ever fallen off during that time.

*Held,* that the subsequent evidence had the same general effect as that struck out; that it righted the wrong, and that the erroneous ruling should not lead to a reversal.

In charging the jury the court said: " You can award her such sum as will compensate her for the suffering and pain she has endured since the accident, and for such suffering in the future resultant directly from the accident."

The accident occurred on June 28, 1891, and the action was tried on March 10, 1893; the plaintiff testified that the night of the accident she experienced pain in her side and in her arm; that she went to bed and was confined there for three days under the doctor's care. After the doctor had called at her house for three days she went to his office, and continued to go there up to the time of the trial, at first every day, then twice a week, and then once a week up to date. That since that time she had felt the pain in her side and wrist; that her wrist was still swollen; that she never had any pain before in her wrist, but that now she has pain there all the time; that prior to the accident she never had rheumatism, but since then she had suffered greatly therefrom. The plaintiff's physician testified that on examining the plaintiff he found that she had sustained quite a large bruise on the side of her ribs under the arm ; that she complained of pains in her arm; that every attempt to use her arm caused great pain, and from a careful examination he determined that there was a partial dislocation of the shoulder. The first time that she called at his office he found that the bruises were disappearing, though she was not able to move her arm, and in attempting to move it, it caused great pain ; that he made another examination a month afterwards, and found her unable to move her arm ; that the pain was constant but not so severe as at the earlier stage. Three or four weeks afterwards he found that she was able to move her arm better, though it could not be moved to the limit. Six or seven weeks afterward he found that she had not improved very much, and he had not examined her arm since. He had prescribed for her a number of times, and every time

she came to him. He had prescribed internal remedies to remove the pain, nervousness and prostration from which she suffered and which caused insomnia, and he used external remedies to relieve the inflammation. She had been troubled with insomnia since that time, and he had a number of times prescribed for her. That he saw her arm the morning of the trial; from a superficial examination he had noticed that it was larger than the other, and that it had been larger since the accident. That the swelling of the arm was the result of the injuries sustained at the time of the accident, and that she now suffered from rheumatism, which he had traced to the accident, that being the only thing he had found to account for it.

*Held,* that the evidence was sufficient to justify the court in charging the jury that they might compensate the plaintiff for such future pain as they might conclude she would suffer. (VAN BRUNT, P. J., dissenting.)

APPEAL by the defendant, the Fort Lee Park and Steamboat Company, from a judgment of the Supreme Court, entered in the office of the clerk of the city and county of New York on the 14th day of March, 1893, upon a verdict of the jury in favor of the plaintiff for $2,000, rendered after a trial at the New York Circuit, and also from an order denying the defendant's motion to set aside the verdict and for a new trial, dated the 10th day of March, 1893, and entered in said New York county clerk's office.

*Alfred Taylor,* for the appellant.

*Alfred Steckler,* for the respondent.

PARKER, J.:

The judgment under review awards to the plaintiff damages for injuries sustained while the relation of common carrier existed between her and the defendant, by reason of which it was chargeable in law with the duty of taking all reasonable precautions to secure to her free and safe ingress and egress to and from its boat.

The defendant maintains a line of steamboats from the foot of Canal street to Fort Lee on the New Jersey shore, having intermediate landings at Twenty-second and Thirty-fourth streets. On the twenty-eighth day of June, plaintiff was a passenger on one of its steamboats called the *Pleasant Valley.*

When the boat reached the foot of West Thirty-fourth street it was made fast, and a gang plank about thirteen feet long and three feet nine inches wide was used for a passageway between the

steamer and a barge which were separated from each other by about three feet, and from the barge the passengers passed to the dock.

The passengers were informed that all who desired to land at this point could do so.   In response to this information plaintiff, accompanied by her child, whom she had taken by the hand, proceeded with others to cross the gang plank, and when about mid-way between the steamboat and the barge she fell over, dragging her child with her, resulting in injuries for which the jury have awarded compensation.

The defendant contended upon the trial, as it does upon this appeal, that it was not negligent in failing to provide at this, and other intermediate landings, a gang plank with a guard rail.   Evidence was presented in its behalf explaining why, at its terminal landings, gang planks with a guard rail were used while gang planks without were made to answer the same purpose at the intermediate landings.   The reason for this difference was stated to be that there was no convenient place on the steamboat where so large a gang plank as it is necessary to have where guard rails are used could be carried, and, therefore, it was necessary that such gang planks should be left on the docks, and as the defendant controlled the docks at its terminal landings it was enabled to make use of them at such landings, and did, but at the intermediate landings it had no such control, and was, therefore, obliged to make use of gang planks without guard or rail.   Its further contention was that, in view of the circumstances mentioned, and the additional fact that it had made use of similar gang planks for a period of over twenty years without an accident previous to the one in question, there was no occasion to apprehend that an accident would occur, and unless it could have been reasonably anticipated that injury would result from the use of such a gang plank, there could not be actionable negligence.   It is insisted that, applying the rule that a party will not be chargeable with negligence where the accident is of such a nature that the party had no reason to apprehend that it could occur, and the arrangements were of such a character as experience had up to that time shown to be safe and suitable and sufficient to meet the requirements of his duty (*Loftus Case*, 84 N. Y. 455), the defendant's motion for a nonsuit should have been granted.   It is unnecessary to determine

whether this general rule would operate to protect the defendant if plaintiff predicated its liability solely on the use of a gang plank without a guard, for the plaintiff insisted that as it was dark the absence of the guard rail made it the special duty of the defendant to provide that the gang plank should be properly lighted, so that the persons in passing off could see where to step, and that it wholly neglected to do so.

Plaintiff testified that when she was in the middle of the gang plank it was very dark, and she undertook to catch hold of the guard rail where none was and fell over.   She further said : " When I was going off of the boat that night I was not talking to anybody ; I did not see the gang plank when I went on it ; I just followed the people and was walking off ; I did not see any light with the crowd ; there was too much of a crowd ; I did not see any light."

William Hipperling testified that he took hold of the little boy by the hand when they were going up the gang plank to the barge ; that " it was dark at the time ; one man with a lantern, but he was back of the crowd ; he was not at the place where the passengers were getting off ; he was on the other side of the passengers ; * * * There was no guard or rail on the gang plank ; there was no light there at the gang plank ; the light that the men had back of the passengers was a lantern, a small one, about a foot high ; it did not throw any light out to the gang plank."

Thomas G. Kennedy, a police officer, testified that he was present on the dock, as was his duty, to preserve order, and that it was dark at the time the boat landed.

Indeed, the necessity for light is not controvered, defendant's contention being that it provided necessary and suitable lights on this occasion, so that if the plaintiff had looked she would have had no difficulty in seeing where to step.   But while plaintiff's evidence in regard to the absence of light was contradicted, a question for a jury was presented, for the story of the plaintiff and her witnesses might be credited, in which event they would be authorized in finding that defendant failed in the discharge of the duty which it owed to its passengers on this occasion.   As under the facts proven the question of contributory negligence was one for the jury, the court rightly denied defendant's motion to dismiss the complaint.   During the trial a managing director of the defendant testified : " We have

never lost a passenger from these planks in carrying a million and a half of people."

This evidence was stricken out on motion, defendant excepting. This was error, as the defendant had the right to have evidence of this character considered by the jury when determining whether the company had reason to apprehend an accident from the use of a gang plank without guards. But while the ruling was erroneous, we think it should not lead to a reversal of the judgment, because the wrong was subsequently righted by the admission of evidence having the same general effect, as a brief reference to the record will show. The same witness testified: " Q. I understand you to say that this same style of gang plank has been in use for twenty years? A. This same style of gang plank has been in use since the boat was built. Has been used day and night. We have never lost a passenger from that style of gang plank or a similar type. We have made a hundred of them, I presume, on that boat, and that is the first case in twenty-two years."

The captain testified : " We have used that same kind of a gang plank on that steamer to my recollection for thirteen years. We have used it ever since I have been there. It has been used both day and night, at all times of the year. I never knew of any other passenger falling off."

Henry Hartnett, who had been in the employ of the company for about twelve years, testified: " We used the same gang plank that night that we had always before used ;   *   *   *   many thousand of passengers passed over that gang plank ; no passenger ever fell off during this time before."

In charging the jury the court said: " You can award her such sum as will compensate her for the suffering and pain she has endured since the accident, and for such suffering in the future resultant directly from the accident."

Defendant's counsel excepted, and made several requests to charge in relation to that subject, which were refused and exceptions taken, thus presenting squarely the question, whether the evidence authorized the jury to compensate her for such pain as they should determine she would suffer in the future.

The accident occurred June 28, 1891, and the action was tried March 10, 1893, or nearly a year and nine months later, at which

time plaintiff testified that the pain which she experienced in her side and arm immediately succeeding the injury continues. She testified : " I experienced the pain in my side and in my arm. Went to bed that night and was confined to my bed for three days under Dr. Wimmer's care. After he called at my house for three days I went to his office. Go there yet. Right after the accident went every day after the three days ; the first part of the time twice a week, then once a week after that up to date. Have felt the pain since that time on the side and wrist ; wrist is still swollen. Never had any pain before that in my wrist, but have pain now there all the time. I never had rheumatism before June 28, 1891." " Q. Since that time have you been troubled with it ? " [Objected to ; objection overruled ; exception taken.] "A. I do, and suffer great pain, especially when ' we have change in the weather.' "

George Wimmer, a witness, testified : " I am a physician ; graduate of Columbia College. Have been practicing as such in the city of New York for a number of years. I have known the plaintiff since I have been treating her.

" My examination showed that she had sustained quite a large bruise — the size of my hand here — on the side of the ribs under the arm ; the arm hanging by the side would cover the bruise.

" She complained of great pain in her arm. I attempted to have her make the several motions with the arm to find she was unable to use it — unable to lift the arm in the customary directions ; every attempt to use the arm caused great pain, and by careful examination I determined there was a partial dislocation of the shoulder.

" My next examination was the first time she called at my house. I found that the bruises were disappearing. She was not able to move her arm ; in attempting to move it, it caused much pain.

" A month after I made another examination. I found her unable to move the arm again, but the pain was constant, but not so severe as at the earlier stage.

" She always had pain whenever the arm was moved.

" My next examination was probably three or four weeks after the second. I found she was able to perform the movements better, although the arm could not be moved to the limit. The pain was always there.

" My next examination was not within six or seven weeks from

the third examination. I found she had not improved very much between that and the last examination. I have not examined the arm since.

" I have prescribed for her a number of times for the pain she suffered. I prescribed for every time she came to me.

" I prescribed internal remedies to remove the pain, nervousness and prostration from which she suffered which caused insomnia; she was unable to sleep, and I used external remedies to relieve the inflammation; she has been troubled with insomnia since that time, and I have a number of times prescribed for her; I saw her arm this morning. The examination this morning was merely superficial. I noticed it is more swollen than it was — larger than the other one. The arm has been larger since the accident.

" This swelling of the arm is the result of the injuries she sustained at that time. She is suffering from rheumatism now. I have traced it to the accident. That is all I find to account for her rheumatism that she suffers from at the present time."

This evidence was sufficient under the ruling in *Kane* v. *N. Y., N. H. & H. R. R. Company* (132 N. Y. 160) to justify the court in charging the jury that they might compensate her for such future pain as they might conclude she would suffer.

The judgment should be affirmed, with costs.

FOLLETT, J., concurred.

VAN BRUNT, P. J. :

I dissent. There was no evidence justifying the submission of the question of future damages to the jury. It was simply allowing them to guess.

Judgment affirmed, with costs.